IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MEIK M. AUGUSTIN GERIKE**,

    Plaintiff,

    v.                                                                                  Civil No. 14-1138 (PAD/BJM)

**RENT-A-CENTER, INC.**,

    Defendant.

## REPORT AND RECOMMENDATION

Meik M. Augustin Gerike ("Augustin") brought suit against Rent-A-Center, Inc. ("RAC") in Puerto Rico state court, alleging employment discrimination and unlawful termination in violation of Puerto Rico law. Docket No. 1-1 ("Compl."). RAC removed the case to federal court, invoking this court's diversity jurisdiction. Docket No. 1. Before the court is RAC's motion to dismiss for lack of subject matter jurisdiction, or in the alternative, to compel arbitration. Docket No. 8 ("Mot."). Augustin opposed the motion, Docket No. 16 ("Opp."), and RAC replied, Docket No. 19. Plaintiff also filed a surreply. Docket No. 23. The case was referred to me for a hearing and report and recommendation. Docket No. 24. Upon review of the parties' submissions, there appears to be no genuine disputes of material fact, thus obviating the need for an evidentiary hearing.

Based on the reasons that follow, defendant's motion should be **GRANTED** without a hearing.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362–63 (1st Cir. 2001), including the existence of a valid arbitration agreement covering the dispute. *See Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998) ("a court may dismiss, rather than stay, a case when all

of the issues before the court are arbitrable"). In assessing a motion to dismiss for lack of subject matter jurisdiction, the court "must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998) (citing *Royal v. Leading Edge Prods., Inc.*, 833 F.2d 1, 1 (1st Cir. 1987)). However, "the court may consider whatever evidence has been submitted," including exhibits, without converting the Rule 12(b)(1) motion into a motion for summary judgment. *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996).

## BACKGROUND

The following summary is based on the well-pleaded facts in the complaint and key documents the authenticity of which are not disputed by the parties.

Plaintiff Meik M. Augustin Gerike is a resident of the Commonwealth of Puerto Rico (Compl. ¶2), and defendant Rent-A-Center, Inc. is Delaware corporation, with its principal place of business located in Plano, Texas (Compl. ¶ 3). RAC operates multiple stores in Puerto Rico, providing leases of furniture, appliances, and electronic equipment to its customers. Compl. ¶ 4.

Augustin was born in Africa, to a Haitian father and German mother. Her primary language is English. She began to work for RAC as an Assistant Manager in Aguadilla, Puerto Rico in February 2006. Compl. ¶¶ 5–8. During her time with RAC, she alleges that her superiors acted in a discriminatory manner, creating a hostile environment by making discriminatory comments and taking adverse employment actions, eventually culminating in her termination. Compl. ¶¶ 10–11. In March 2011, for reasons unknown, Augustin was transferred from the Aguadilla store to the Manati store. Compl. ¶ 14. While there, her work hours were reduced and she was given job responsibilities corresponding to positions below her rank. Compl. ¶¶ 17–18, 22. In August 2012, she was transferred to the RAC store in San Sebastián, Puerto Rico, where she was forced to perform tasks corresponding to an Assistant Customer Account Representative, including

delivering merchandise and collecting payments. Compl. ¶¶ 23–24. Ultimately, on January 18, 2013, Augustin was dismissed from RAC. Compl. ¶ 35.

At the time of hiring, on February 2, 2006, Augustin and RAC signed a "Mutual Agreement to Arbitrate Claims," written in the Spanish language. Docket Nos. 8-2 (Spanish version); 10-1 (English translation). Prior to signing, Augustin claims she expressed concern to RAC's hiring officer, explaining that she did not understand the contents of the documents she was signing. RAC's hiring officer allegedly dismissed the document as a mere formality, and did not inform her that the document was an agreement to arbitrate. Opp. 7–8. The contract states that the parties agree to resolve all "past, present or future claims" against one another through arbitration. Docket No. 10-1, at 1. The agreement further states that the "[a]rbitrator . . . shall have the exclusive authority to solve any dispute related to the construal, applicability, compliance with or creation of this Agreement, including, but not limited to any claim that any of the parties to this Agreement may consider to be null and void or voidable." Docket No. 10-1, at 3.

## DISCUSSION

Rent-A-Center seeks to enforce the terms of the arbitration agreement, and requests that the court dismiss the complaint or stay these proceedings until the completion of arbitration proceedings. Mot. 12. Augustin opposes, arguing that the arbitration agreement is void because she did not understand what she was signing at the time and thus did not provide valid consent to its terms.[1] Opp. 1–2.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, was enacted "to overcome a history of judicial hostility to arbitration agreements," and reflects "the fundamental

---

[1] RAC and Augustin in their reply and sur-reply, respectively, raise additional arguments regarding the statute of limitations for an action to declare nullity of a contract under Puerto Rico law. Docket Nos. 19, at 4; 23, at 2. However, as discussed below, the court need not reach these arguments, because the arbitration agreement itself refers such gateway issues of contract validity or enforceability to the arbitrator for decision. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010).

principle that an agreement to arbitrate is a matter of contract." *Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc.*, 680 F.3d 118, 121 (1st Cir. 2012) (internal citations and quotations omitted). Section 2 of the Act places arbitration agreements on an equal footing as other contracts by stating that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. At the request of a party, a court "shall" stay proceedings if the issues involved in the suit are subject to arbitration under the parties' agreement, § 3, and "shall" compel arbitration if a party unjustifiably refuses to submit to arbitration, § 4.

In general, when deciding whether to compel arbitration, the court is charged with determining two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, it is equally clear that parties may agree to submit such "gateway issues of arbitrability" to arbitration. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 71. At the very least, the party seeking to compel arbitration has the burden of showing the existence of an arbitration agreement. *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003).

The arbitration agreement in this case provides the arbitrator with exclusive authority to decide gateway issues such as the arbitration agreement's "construal, applicability . . . or creation." Docket No. 10-1, at 3. A virtually identical "delegation provision" was at issue in *Rent-A-Center West, Inc. v. Jackson*, in which the Supreme Court held that where a party challenges the "validity" of an arbitration agreement as a whole, but not the specific delegation provision at issue, the delegation provision must be enforced, and any issues of contract validity must be resolved by the arbitrator. 561 U.S.

at 72 ("unless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator").  The Court, however, also acknowledged that the "issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded,'" and the Court in *Rent-A-Center West* only addressed the former question.  *Id.* at 70 n.2; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, n.1 (2006) (distinguishing the generally nonarbitral question of whether an arbitration agreement was ever formed from the question of whether a contract containing an arbitration clause was illegal when formed). Although the RAC arbitration agreement is broadly worded and delegates to the arbitrator authority to decide "any dispute related to the . . . creation of this Agreement," because arbitration agreements are a matter of contract, it logically follows that the court must first "decide whether [an arbitration agreement] exists before it decides whether to stay an action and order arbitration."  *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010); *Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*, 683 F.3d 18, 25 (1st Cir. 2012) (noting that the "district court, quite appropriately, first looked for whether there was a valid, contractual agreement to arbitrate" before referring remaining arbitrability issues to arbitration).

Although Augustin does not say it in so many words, she appears to challenge the *existence* of a contract, claiming that she never consented to arbitration because she was unfamiliar with Spanish and could not understand the contents of the arbitration agreement at signing.  Opp. 3–4.  Augustin also asserts that RAC deceived her into signing the arbitration agreement.  Opp. 7.[2]  Because Augustin raises basic issues of

---

[2] Notably, Augustin's opposition brief makes no mention of the controlling Supreme Court jurisprudence surrounding delegation clauses raised by RAC, and moreover fails to acknowledge the existence of the agreement's delegation provision.

contract formation, they must first be resolved by the court before an order to compel arbitration may be entered.

In general, state contract law governs disputes arising under an arbitration agreement. *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). Under Puerto Rico law, for a contract to be valid, there must be (1) the consent of the contracting parties, (2) a definite object which may be the subject of the contract, and (3) the cause or consideration. 31 L.P.R.A. § 3391. Consent is void if given "by error, under violence, by intimidation, or deceit." § 3404. Deceit occurs "when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made." § 3408. Moreover, deceit will only serve to nullify a contract where it is "serious" and used by only one of the contracting parties. § 3409. Federal courts interpreting Puerto Rico law have made clear that Puerto Rico contract law requires "a strong underlying presumption in favor of good faith and honesty; the party alleging fraud has the burden of presenting evidence which is strong, clear, unchallengeable, convincing, and conclusive, since a mere preponderance of the evidence is not sufficient to establish the existence of fraud in Puerto Rico." *P.R. Elec. Power Auth. v. Action Refund*, 515 F.3d 57, 66–67 (1st Cir. 2008) (internal citations omitted).

Augustin does not dispute that she signed the arbitration agreement, nor does she allege violence or intimidation by RAC. Rather, she claims that her consent was vitiated by deceit. Augustin's conclusory allegations, however, do not suffice to establish deceit as defined by the Puerto Rico Civil Code. While RAC may have "misled" her into signing the arbitration agreement without a full understanding of its terms, she never states that she would not have signed the arbitration agreement had she known its contents. § 3408 (deceit only occurs when one party induces another to enter an agreement that he would not have entered but-for the misstatement or omission). Indeed, unless Augustin had some special animosity against arbitration, it is unlikely that she

would have refused to sign the arbitration agreement. Moreover, the fact that the document was in Spanish, a language unfamiliar to her at the time, also does not negate her consent. Augustin was well aware of her own language abilities, and it was ultimately her responsibility to obtain a translation or clarification of the contract terms prior to signing.[3] *See Soto v. State Chem. Sales Co. Int'l*, 719 F. Supp. 2d 189, 193 (2010) (rejecting argument that lack of familiarity with English negated consent to English-language contract). He "who signs an agreement cannot subsequently seek to avoid its enforcement on the grounds that he did not read the agreement or did not understand its terms" *Stereo Gema, Inc. v. Magnadyne Corp.*, 941 F. Supp. 271, 276 (D.P.R. 1996). And allowing Augustin to avoid arbitration would excuse reckless behavior, as individuals who sign contracts without fully understanding its terms may avoid unfavorable terms simply by claiming they did not understand the terms at signing.

Because Augustin manifested objective consent to the arbitration agreement, a contract was clearly formed between the parties, and any remaining issues regarding the validity of the arbitration agreement must be referred to the arbitrator for resolution pursuant to the delegation provision in the parties' agreement. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) (finding an arbitration agreement was formed between the parties, and that all remaining disputes regarding enforceability should be resolved through arbitration).

## CONCLUSION

For the foregoing reasons, Rent-A-Center's motion should be **GRANTED**.

---

[3] While plaintiff's opposition brief states that she was not "allowed to procure a translation or to be informed of the content of the [agreement]," her declaration under penalty of perjury merely states that RAC did not offer her "the opportunity to discuss the document with any one else or to request a translation." Opp. 8; Docket No. 16-1, at 2. Augustin's vague and inconsistent assertions hardly suffice as clear, unchallengeable, and convincing evidence of fraud or deceit by RAC.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt.  Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 27th day of June, 2014.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge